**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SHERMAN D. LEWIS, JR.,                    :

    Plaintiff,                    :

v.                    :          CA 12-00201-C

MICHAEL J. ASTRUE,
Commissioner of Social Security,                    :

    Defendant.                    :

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI").   The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 22 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").)   Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 15), the Commissioner's brief (Doc. 19), and the arguments presented at the November 5, 2012 Hearing (*see* Doc. 21), it is determined that the Commissioner's decision denying the plaintiff benefits should be **AFFIRMED**.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.   (*See* Doc. 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

## Procedural Background

On July 28, 2008, the plaintiff filed applications for DIB and SSI (R. 133-140), alleging disability beginning May 28, 2008 (*see* R. 136).   His applications were initially denied on September 17, 2008.   (*See* R. 79-88.)   A hearing was then conducted before an Administrative Law Judge on February 25, 2010 (*see* R. 50-76).   On March 19, 2010, the ALJ issued a decision finding that the claimant was not disabled (R. 32-49), and the plaintiff sought review from the Appeals Council.   The Appeals Council issued its decision declining to review the ALJ's determination on February 9, 2012 (*see* R. 1-7)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on March 21, 2012 (*see* Doc. 1).

## Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.   *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history.   *Id.*   Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.   *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).   Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the

Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence.    Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."   *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff asserts two, related arguments: the Commissioner erred by, first, rejecting the opinions of the plaintiff's treating physicians, and, second, finding that the plaintiff "can perform 'sedentary work,' with moderate mental limitations, [a] finding[ that is] not supported by linkage to either the medical opinion evidence of record or reasonable inferences drawn from the medical evidence as a whole."   (Doc. 15 at 2.)

**Discussion**

This is yet another matter in which the ALJ's RFC assessment and, moreover, how she reached that assessment is under attack on appeal.   Here, the ALJ determined that the plaintiff retains the RFC to perform sedentary work with certain additional restrictions.   Specifically, her fifth step finding is:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is unable to climb ladders, scaffolds, or ropes, and is unable to work around unprotected heights or dangerous equipment.   He is unable to understand, remember, and carry out detailed or complex instructions. He is unable to work in crowds.   He is limited to occasional contact.

(R. 41.)

Because the plaintiff takes issue with both the ALJ's decision to reject the opinions of his treating physicians and her RFC assessment, formed without those opinions, it is necessary to set forth the proper analysis for consideration of RFC issues raised in cases like this one.

   *1.     The Commissioner's RFC Assessment.*

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."   *Peeler v. Astrue*, 400 Fed. App'x 492, 493 n.2 (11th Cir. Oct. 15, 2010) (per curiam) (citing 20 C.F.R. § 416.945(a)).   Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'"   *Hanna v. Astrue*, 395 Fed. App'x 634, 635 (11th Cir. Sept. 9, 2010) (per curiam) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir.

4

2004)).   "In making an RFC determination, the ALJ must consider the record evidence, including evidence of non-severe impairments."   *Id.* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC—a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under   § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."), that this Court has never taken issue with.   *See, e.g., Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned).   The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources.   20 C.F.R. § 416.945(a)(3).   In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as

5

"descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]"   *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section."   20 C.F.R. § 416.945(a)(4).

> (b)   *Physical abilities.*   When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c)   *Mental abilities.*   When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work-setting, may reduce your ability to do past work and other work.

> (d)   *Other abilities affected by impairment(s).*   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities.   If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence.   *Compare Figgs v. Astrue*, No. 5:10–cv–478–Oc–18TBS, 2011 WL 5357907, at *1-2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is

not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved*, 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), *and Scott v. Astrue*, No. CV 110–052, 2011 WL 2469832, at *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted*, 2011 WL 2461931 (S.D. Ga. June 17, 2011), *with Green v. Social Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.").  And while, as explained in *Green*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's decision to give less than controlling weight to such an opinion,[2] 223 Fed. App'x at 923-24; *see also id.* at 923

---

[2]     An ALJ's articulation of reasons for giving less than controlling weight to a treating source's RFC assessment must, of course, be supported by substantial evidence.   *See, e.g., Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per cuiam) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.   In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir. July 28, 2010) (per curiam) (same).

("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **_nothing_** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must **_link_** the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[3]    *Compare,*

---

[3]      In *Green*, such linkage was easily identified since the documentary evidence remaining after the ALJ properly gave less than controlling weight to the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication."   223 Fed. App'x at 923-24.   Based upon such nominal clinical findings, the court in Green found "substantial evidence support[ing] the ALJ's determination that Green could perform light work."   *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **_must—in all cases—include_** an RFC or PCE from a physician.   *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **_necessarily had to_** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added).   But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence.   [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*e.g.*, *Saunders v. Astrue*, Civil Action No. 1:11cv308–WC, 2012 WL 997222, at *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying."), *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision.   For example, in *Hanna*, the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.'   In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . .   [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work.   ***But this conclusion is not clear from the record.***   The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation.   The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the

_____

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.  ***The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.***  The ALJ has not done so here.  To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence.  The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work.  ***Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case.***"

395 Fed. App'x at 635-36 (emphasis added and internal citations and footnotes omitted);

*see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27,

2012) ("'The existence of substantial evidence in the record favorable to the

Commissioner may not insulate the ALJ's determination from remand when he or she

does not provide a ***sufficient rationale to link such evidence to the legal conclusions

reached***.'  Where the district court cannot discern the basis for the Commissioner's

decision, a sentence-four remand may be appropriate to allow him to explain the basis

for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005))

(emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th

Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the

reviewing court with sufficient reasoning for determining that the proper legal analysis

has been conducted mandates reversal.") (citation omitted); *Dixon v. Astrue*, 312 Fed.

App'x 226, 229 (11th Cir. Feb. 13, 2009) (per curiam) (after noting,"'[w]hile we may not

supply a reasoned basis for [an] agency's action that the agency itself has not given, we

will uphold a decision of less than ideal clarity if the agency's path may reasonably be

discerned[,]'" vacating a district court's decision to affirm the ALJ where "the ALJ's

path [was] not reasonably discernible") (quoting *Zahnd v. Secretary, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision.   *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . .   There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].   However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.   Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.") (emphasis in original).

### 2.    *Treating Sources.*

Given the standard set forth above, the Court must first determine whether the reasons articulated by the ALJ for not giving controlling weight to the opinions of Drs.

11

Spiro (*see* R. 42) and Fort (*see* R. 43), both of whom, according to the plaintiff, are treating sources, are supported by substantial evidence.   *See, e.g., Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.").   A finding that the ALJ failed to articulate reasons, supported by substantial evidence, for rejecting a treating source's opinion, or a portion thereof, ends the Court's review of an ALJ's RFC determination.

     As to treating sources, one district court outside of this Circuit has said:

> In every case, a treating physician will have greater access to the medical records, and more familiarity with the patient and his condition than will an examining physician or a physician who merely reviewed the record evidence.   This is the reason for the treating physician rule whereby greater deference is usually accorded to the opinion of a treating physician than the opinion of a physician who has only examined the patient one time or the opinion of a physician who has merely reviewed the medical records.   This is the reason the courts require an ALJ to provide specific, legitimate reasons for discounting a treating physician's opinion.

*Vine v. Astrue*, Civil Action No. 09-2212-KHV-GBC, 2010 WL 2245079, at *11 (D. Kan. May 11, 2010) (internal citations omitted), *report & recommendation adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010).   And the law in this Circuit is that

> [t]he opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).   Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are

supported by substantial evidence, there is no reversible error.   *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert*, 396 Fed. App'x at 655.

### a.   *Dr. Spiro.*

In her decision, the ALJ describes Dr. Spiro and his opinion as follows:

> Arthur W. Spiro, D.O., a VA physician, completed a form on November 3, 2008, indicating that the claimant had American Heart Association ["AHA"] Class III heart disease, suggesting that the individual has marked limitations of physical activity, such that he is comfortable at rest, but experiences cardiac symptomatology with less than ordinary activity. It is noted that Dr. Spiro is an anesthesiologist.

(R. 39 (internal record citation omitted).)   And with regard to the weight to be afforded

Dr. Spiro's opinion, the ALJ stated,

> Dr. Spiro described the claimant's heart disease as AHA Class III, but he is an anesthesiologist, and such a conclusion is outside his area of expertise. The treatment notes do not confirm symptomatology of the degree suggested by Class III heart disease.   I therefore find that his statement is entitled to little weight.

(R. 42 (internal record citation omitted).)

Good cause to afford less than controlling weight to the opinion of a treating

physician includes **both (1)** that the treating physician rendered an opinion outside his

or her area of expertise, *see Brihn v. Astrue*, 582 F. Supp. 2d 1088, 1100–01 (W.D. Wis.

2008) (noting that when "the record contains well[-]supported contradictory evidence,

the treating physician's opinion is just one more piece of evidence for the [ALJ] to

weigh, taking into consideration . . . factors listed in the regulation[,]" including

"whether the physician is a specialist in the allegedly disability condition") (citing 20

C.F.R. § 404.1527(d)(2)); *see, e.g., Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367 (N.D.

Ga. 2001) ("Dr. McDuffie is a specialist in rheumatology and thus better qualified to

diagnosis fibromyalgia and to gauge its effects on the individual than Dr. Hudgins, who specializes in internal medicine.") (citing 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.")), *and* *(2)* that the treating physician's opinion is inconsistent with his or her treatment notes, *see Phillips*, 357 F.3d at 1241 (good cause includes that the "treating physician's opinion was . . . inconsistent with the doctor's own medical records"); *cf. Brihn*, 582 F. Supp. 2d at 1101 (noting that another factor under the regulation is "how consistent the physician's opinion is with the evidence as a whole and other factors").   The Court, therefore, finds that the ALJ's decision articulates sufficient good cause (*i.e.,* the stated reasons are supported by substantial evidence) to give Dr. Spiro's opinion "little weight."

### b. *Dr. Fort.*

The ALJ's decision provides the following regarding Dr. Fort and her opinion:

> On January 12, 2010, Juliana Fort, M.D., a psychiatrist at the VA Medical Center, completed a questionnaire on which she reported that the claimant had depression, psychosis, and anxiety with symptoms and limitations[,] which were of listing-level severity.   She indicated that the claimant was markedly impaired in ability to remember work-liked procedures; in ability to understand, remember, and carry out detailed instructions; in ability to maintain attention and concentration for extended periods; in ability to sustain a routine without special supervisions; in ability to complete a normal work day and work week without interruptions from psychologically-based symptoms; and in ability to respond appropriately to supervision, co-workers, and work pressure.   Dr. Fort noted that the claimant had had depression since childhood, and that he could be expected to have continued depression off alcohol.   She reported that he had not used alcohol over the past several months.

(R. 39 (internal record citation omitted).)   With regard to the weight to be afforded Dr. Fort's opinion, the ALJ stated,

14

> I have considered Dr. Fort's assessment, but she has treated [the plaintiff] only briefly and the stated limitations seem substantially in excess of what would be expected even given the complaints reported by the claimant. For these reasons, Dr. Fort's conclusions are not considered persuasive.

(R. 43 (internal record citation omitted).)

That a physician had only a brief treating relationship with a plaintiff is clearly a good cause to afford the opinion of that treating physician less than controlling weight. *See, e.g., Brihn*, 582 F. Supp. 2d at 1101 (noting that another factor under the regulation is "the number of times the treating physician has examined the claimant").   The ALJ's second reason—Dr. Fort's "limitations seem substantially in excess of what would be expected even given the complaints reported by the claimant"—could be interpreted, at first blush at least, as the ALJ substituting her own judgment for the judgment of a physician, but the second reason, although nebulous, is better characterized, after consideration of Dr. Fort's lengthy restrictions (*see, e.g.,* R. 39), as the ALJ finding that Dr. Fort's opinion is either "not bolstered by the evidence[,]" *Phillips*, 357 F.3d at 1241, or, put slightly differently, not consistent "with the evidence as a whole and other factors[,]" *Brihn*, 582 F. Supp. 2d at 1101.   Both provide good cause to afford a treating source less than controlling weight.   The Court, therefore, finds that the ALJ's decision not to consider Dr. Fort's conclusions persuasive is also supported by substantial evidence.

### 3.     *The basis for the ALJ's RFC determination.*

Because substantial evidence supports the reasons articulated by the ALJ for not giving controlling weight to the opinions of Drs. Spiro and Fort, the Court must now determine whether the ALJ's RFC assessment properly relies on and is linked to other specific evidence in the record regarding the plaintiff's ability to perform the physical,

mental, sensory, and other requirements of work.   If the ALJ's decision provides such linkage—that is, it gives this Court a sufficient rationale to link the remaining record evidence to her legal conclusions—the ALJ's decision is supported by substantial evidence and will be affirmed.

After rejecting the opinions of Drs. Spiro and Fort, the ALJ stated, "In light of the record as a whole and the claimant's history, I find that the conclusions of Dr. Hinton, the state agency psychologist, represent a reasonable estimate of the claimant's functioning."   (R. 43.)[4]   And, according to the ALJ's decision, Dr. Hinton

> reviewed the evidence of record on September 16, 2008, and completed a psychiatric review technique form on which he indicated that the claimant had affective and substance abuse disorders.   He indicated that the claimant was mildly restricted in activities of daily living and that he was moderately restricted in social functioning and in concentration, persistence or pace.   He reported that the "C" criteria were not present. Dr. Hinton also completed a mental residual functional capacity assessment on which he indicated that the claimant was moderately impaired in ability to understand, remember, and carry out instructions; in ability to maintain attention and concentration for extended period; and in ability to interact with the public.   He concluded that the claimant could understand, remember, and carry out short simple instructions and that he could maintain attention and concentration for reasonable periods. He stated that contact with the general public should not be a usual job assignment.

---

[4]      On appeal, the plaintiff also challenges the ALJ's finding that, with regard the plaintiff's "heart function[,] it is reasonable to suppose that [it] continued to improve with resolution of acute symptoms" post-May 2008, contending that the ALJ makes no reference to evidence to support this belief.   The ALJ, however, gives "substantial weight to VA progress notes [to] find that the claimant can perform sedentary work" with certain additional limitations.   And, in his brief, the plaintiff admits that "evidence not before the ALJ, but submitted to the Appeals Council, establishes that his heart function did somewhat improve" (Doc. 15 at 6).   *See Crist v. Astrue*, Civil No. 5:10cv00106, 2012 WL 542705, at *6 (W.D. Va. Feb. 21, 2012) (considering evidence submitted to the Appeals Council that "fully corroborate[d] the evidence upon which the ALJ relied") (citation omitted), *report & recommendation adopted*, 2012 WL 843756 (W.D. Va. Mar. 12, 2012).   Moreover, at the hearing in this matter, the plaintiff's counsel admitted that no cardiologist has imposed limitations on the plaintiff.   The Court, therefore, finds that if the ALJ committed error by "suppos[ing,]" such error is harmless.

(R. 38 (record citations omitted).)

In his brief, the plaintiff provides that

[i]t bears mentioning that the ALJ rejected not only a treating
psychologist's opinion[] (Dr. Fort), but also the opinion[] of the
Consultative Examiner, Dr. O'Brien, and then relies on the opinion of Dr.
Hinton, who not only has never seen Mr. Lewis, but rendered his opinions
on September 16, 2008 (Exhibits 6F and 7F, Tr. 328-45) without the benefit
of reviewing the records of Dr. Fort (Exhibit 14F, dated in January 2010).
The opinion of a non-examining, reviewing physician is not entitled to
more weight than the opinion of a treating physician.  *Swindle v. Sullivan*,
914 F.2d 222, 226 n.3 (11th Cir. 1990).   That reasoning is particularly true
when, as in this case, the non-examining, reviewing person has not seen a
significant portion of the evidence.

(Doc. 15 at 12.)

Taking the plaintiff's second point first, when he completed the PRTF and mental

RFC in September, 2008, Dr. Hinton obviously lacked the benefit of reviewing the

records of, or consider the opinion rendered by, Dr. Fort.   The ALJ, however, had the

benefit of reviewing both Dr. Fort's records prior to the issuance of   her opinion and

decided to reject Dr. Fort's opinion—providing good cause for that decision, *see*

*supra*—and adopt Dr. Hinton's.   This is significant because if ***neither*** the state agency

non-examining physician rendering an opinion based on a review of the medical

evidence that includes the opinion of a treating physician ***nor*** the ALJ had access to the

opinion of the treating physician, an ALJ's decision relying on the state agency

non-examining physician's opinion would not be supported by substantial evidence.

*See, e.g., Williams v. Astrue*, Civil Action No. 5:09CV00095, 2010 WL 1924481, at *2-3

(W.D. Va. May 12, 2010) (in which the ALJ relied on/quoted from the report of a state

disability agency psychologist's mental RFC and PRTF, the court remanded, noting,

"the simple fact is that neither Dr. Kalil ***nor*** the Administrative Law Judge took into

account the global assessments set forth in the psychiatric reports from the Valley Community Services Board or the University of Virginia Medical Center [treating sources]. . . .   Dr. Kalil completed his assessment before these reports became available.   The Administrative Law Judge made no mention of the Global Assessments of Functioning in his summary of the evidence.   Thus, there is no reason to believe that the Law Judge considered the diagnostic impressions and opinions of the treating psychiatrists in concluding that plaintiff retains the residual functional capacity for sustained, light work activity.") (emphasis added); *compare id.*, *with Tarver v. Astrue*, No. CA 10–0247–C, 2011 WL 206217, at *5-6 (S.D. Ala. Jan. 21, 2011) (distinguishing *Williams* and affirming where an examining physician, who was also able to physically assess the plaintiff, failed to specifically cite to an MRI from a treating source, **but the ALJ specifically considered the same MRI in his opinion**).[5]

As to the plaintiff's first point, while the Eleventh Circuit, in *Swindle*, held that the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision, 914 F.2d at 226 n.3 (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985))—a holding that is followed in this Circuit still, *see, e.g., O'Bier v. Commissioner of Soc. Sec. Admin.*, 338 Fed. App'x 796, 798 (11th Cir. July 2, 2009) (per curiam) (citing *Swindle* but also noting that an ALJ "may consider the reports and assessments of state agency physicians as expert opinions") (citing 20 C.F.R. § 416.927(f)(2)(i)))—under certain circumstances,

---

[5]      It should be pointed out that Dr. Hinton did have the benefit of reviewing Dr. Carolyn O'Brien's consultative examination of the plaintiff, completed on August 22, 2008 (R. 322-326), and, according to the plaintiff, Dr. Fort's opinion . . . is not inconsistent with . . . Dr. O'Brien['s]" (Doc. 15 at 11).

18

"substantial evidence supports [an] ALJ's decision to assign great weight to" the opinion of a state agency physician, *Ogranaja v. Commissioner of Soc. Sec.*, 186 Fed. App'x 848, 850-51 (11th Cir. June 5, 2006) (per curiam) (citing *Swindle* but then noting that, there, "[t]he ALJ arrived at his decision *after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians*.   The ALJ found that, unlike [the treating physician's] opinions, the expert opinions of the non-examining state agency physicians were supported by and consistent with *the record as a whole*.") (emphasis added).[6]   Similarly, here, the ALJ adopted the conclusions of Dr. Hinton "[i]n light of the record as a whole and the claimant's history[.]"   (R. 43.)   Based on a review of this statement and the ALJ's decision in its entirety—in which the ALJ properly rejects the opinions of treating sources—and in light of *Ogranaja*, the undersigned cannot say that the decision to adopt—in essence, afford great weight to—Dr. Hinton's opinion is not based on substantial evidence.   *See, e.g., Davis v. Astrue*, Civil Action No. 2:08CV631–SRW, 2010 WL 1381004, at *5 (M.D. Ala. Mar. 31, 2010)

---

[6]     As recently explained by the court in *Hogan v. Astrue*, Civil Action No. 2:11cv237–CSC, 2012 WL 3155570 (M.D. Ala. Aug. 3, 2012),

> [i]n isolation, *Swindle* seems to suggest that the opinion of a nonexamining physician cannot be substantial evidence under any circumstances.   *Swindle* cites *Broughton* as authority, but that case "held that the opinion of a nonexamining physician is entitled to little weight *if it is contrary to the opinion of the claimant's treating physician*."   *Broughton*, 776 F.2d at 962 (emphasis added).   That formulation of the law is consistent with *Lamb*[ *v. Bowen*, 847 F.2d 698 (11th Cir. 1988)] and *Sharfarz*[ *v. Bowen*, 825 F.2d 278 (11th Cir. 1987)]. Thus, the court concludes that the opinion of a non-examining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians *or other medical evidence in the record*.

*Id.* at *5 (second emphasis added).   In *Hogan*, the court ultimately affirmed the ALJ's decision, concluding, "[a]fter a careful review of all the medical records, . . . that the ALJ's residual functional capacity [was] consistent with *the medical evidence as a whole* as well as Hogan's testimony about her abilities."   *Id.* at *6 (emphasis added).

(holding that "the ALJ properly assigned 'great weight'" to the opinion a non-examining physician because that opinion was "supported by and consistent with the record *as a whole*[,] unlike the opinion of plaintiff's treating sources") (emphasis added); *see also id.* ("The opinion of a non-examining physician alone does not constitute substantial evidence.   *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). However, *where the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources*.   *See Wainright v. Commissioner of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971(11th Cir. Mar. 9, 2007) (per curiam) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected examining psychologist's opinion, clearly articulated his reasons for doing so, and the decision was supported by substantial evidence); *Osborn v. Barnhart*, 194 Fed. App'x 654, 667 (11th Cir. Aug. 24, 2006) (per curiam) (holding that it was proper for the ALJ to give more weight to the non-examining physician and only minimal weight to the treating physician because the treating physician's opinion was not supported by objective medical evidence).") (emphasis added and citations modified); *Wilkinson v. Commissioner of Soc. Sec. Admin.*, 289 Fed. App'x. 384, 386 (11th Cir. Aug. 20, 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion.   The ALJ considered the opinions of other treating, examining, and non-examining physicians; rehabilitation discharge notes indicating improvement; and Wilkinson's own disability reports and testimony.") (citing *Broughton*, 776 F.2d at 962).

Based on the law in this Circuit, the Court must conclude that the ALJ properly relied on the opinions of (*i.e.*, the PRTF and mental RFC assessment completed by) Dr. Hinton and that these opinions provide the necessary linkage regarding the plaintiff's ability to perform, in particular, the mental requirements of work.   Therefore, the ALJ's decision provides this Court with a sufficient rationale to review her legal conclusions and conclude that the decision is supported by substantial evidence.

<u>Conclusion</u>

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the plaintiff benefits be **AFFIRMED**.

**DONE and ORDERED** this the 20th day of November, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**